IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN V. TIPOGRAPH, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) Civ. A. No. 1:13-cv-00239 <br> ) <br> ) |
| DEPARTMENT OF JUSTICE, | ) <br> ) |
| Defendant. | ) <br> ) |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 231 employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information

1

pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to plaintiff's request for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of plaintiff's FOIA request to FBIHQ, which sought access to records concerning her client, Marie Jeanette Mason.

(4) This is my second declaration in this case, and incorporates and supplements my first declaration dated July 22, 2014. *See* ECF No. 22 ("1st Hardy Decl."). This declaration is being submitted in further support of defendant's motion for summary judgment and in opposition to plaintiff's cross-motion for partial summary judgment.

I. **Sealed Court Records**

(5) The FBI originally withheld some court records that were determined to be subject to a court's sealing order. In preparing this declaration, the FBI conducted additional research of the court's docket via Public Access to Court Electronic Records ("PACER") and FBI determined the sealing orders protecting these records has been lifted. Therefore, the FBI is releasing in full to plaintiff the following Bates pages: Mason-5-22, 27-52, 55-59, 73-88, 91-106, 149, 152-172, 196, and 236-290. *See* Exhibit A.

## II.  Assertion of FOIA Exemption 7(A)

(6)     The FBI used a format recognized for years by this District Court (D.D.C.) in preparing its *Vaughn* declaration for this civil action.

(7)     As previously explained in my first declaration, the FBI performed a document-by-document review of the documents responsive to plaintiff's FOIA request.  ECF No. 22, 1st Hardy Decl. at ¶ 40.  By performing this document-by-document review, the FBI was able to group the documents into functional categories, describe these categories, and explain why release of the documents in each category would interfere with pending or prospective law enforcement proceedings.  *Id.* at ¶¶ 40-41(a)-(u).  Furthermore, this document-by-document review also included a review for all public source information, which the FBI released to plaintiff. *Id.* at ¶ 47.  Documents were grouped into categories because the nature, characteristics, and/or content of the documents was sufficiently similar that the harm in releasing documents in the category was common to all of the documents in the category.  Thus, they could be treated together as a group, rather than being addressed individually.

(8)     The FBI submitted the declaration of John Giacalone, Assistant Director for Counterterrorism in support of its motion for summary judgment.  Assistant Director Giacalone's declaration, which was submitted *in camera, ex parte*, described how disclosure of the records sought by plaintiff and withheld by the FBI would interfere with ongoing FBI investigations and any prospective prosecutions and thus were exempt from disclosure pursuant to FOIA Exemption 7(A).  The FBI is unable to more fully articulate the harm on the public record without causing the very harms it seeks to prevent by protecting this information pursuant to Exemption 7(A).

(9)     With regard to plaintiff's challenge to the FBI's purported practice of applying

3

Exemption 7(A) "at the file level," the FBI conducted a detailed document-by-document review of the responsive records in this case in order to apply both Exemption 7(A) and to identify any underlying exemptions that protect the information. Moreover, at the administrative stage in this case and in other cases in which Exemption 7(A) is asserted to protect pending investigations and prosecutions, RIDS researches responsive files to ascertain their status and consults closely with the assigned case agents and operational personnel in order to determine whether and to identify what information can be released without causing harm to the investigation or prosecution.

### III. Assertion of Underlying FOIA Exemption 5 – Deliberative Process Privilege

(10)    As previously explained in my first declaration, in addition to FOIA Exemption 7(A), the FBI asserted Exemption 5 to protect deliberative materials located in the pending investigative files responsive to plaintiff's request. The information protected concerned internal FBI and DOJ discussions regarding the scope and focus of the investigations and prosecutions. The discussions preceded final decisionmaking about particular investigative or prosecutive actions and were part of the process by which decisions about those actions were made. *See* ECF No. 22, 1st Hardy Decl. at ¶¶ 48, 69-71. However, because these materials were also protected in full under Exemption 7(A) so as to not interfere with the pending investigation and any pending/prospective prosecutions, more details cannot be provided on the public record without causing such harm.

(11)    The FBI protected these same materials under Exemption 5 pursuant to the attorney work product and/or attorney-client privileges. Plaintiff has not challenged the FBI's assertion of these privileges, and so has conceded the FBI's protection of these records irrespective of whether they were properly protected under the deliberative process privilege.

4

IV. **Assertion of Underlying FOIA Exemption 7(D) – Implied Assurances of Confidentiality**

(12) As previously explained in my first declaration, in addition to FOIA Exemption 7(A), the FBI asserted Exemption 7(D) to protect the names, identifying information about, and information provided by third parties under circumstances in which confidentiality can be inferred. *See id.* at ¶¶ 48, 87-88.

(13) Unlike the *Sennett* case to which plaintiff refers, this case involves pending law enforcement proceedings and so the confidential source information here was protected first under Exemption 7(A) and then also under Exemption 7(D). The FBI considered and applied the *Landano* factors – *i.e.*, the nature of the crimes under investigation (*see e.g., id.* at ¶¶7-9) and the source's/sources' relationship to those crimes – concluding that the source(s) provided information under circumstances where confidentiality could reasonably be inferred. The FBI notes that in its experience, individuals with connections to animal and environmental extremist groups and activities who have cooperated with and provided information to the FBI have faced harassment and received death threats when their cooperation has been revealed. To publicly disclose any further information about the crimes being investigated by the FBI and/or the source's/sources' relationship to those crimes, however, would undermine the protections afforded by Exemption 7(A) and adversely affect the pending enforcement proceedings that the FBI is attempting to protect.

V. **Pages Removed as Duplicates**

(14) In processing material responsive to plaintiff's request, the FBI withheld 75 pages of duplicate records. In an effort to minimize duplication costs to both the FBI and the requester, it

is the FBI's practice not to process duplicate copies of the same document. However, in plaintiff's cross-motion, she specifically seeks these duplicate pages. Therefore, the FBI is releasing (in full or in part) the following Bates pages to plaintiff: Mason-107-124, 132-133, 139-148, 150-151, 173-188, 197-205, 291-306, and 432-433. *See* **Exhibit B**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A and B attached hereto are true and correct copies.

Executed this 16th day of December, 2014.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia