UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN TIPOGRAPH,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Case No. 1:13-cv-00239 (CRC) |

## MEMORANDUM OPINION

Susan Tipograph, a New York attorney, lodged a Freedom of Information Act ("FOIA") request with the Federal Bureau of Information ("FBI") seeking records about Marie Mason, her incarcerated client. The FBI initially withheld all responsive records in Mason's investigative file under FOIA Exemption 7(A), covering law enforcement records. After Tipograph filed suit in this Court, the FBI released a number of public documents from the file. Both parties have now moved for summary judgment. Tipograph contends that the FBI has not justified withholding the remaining records in Mason's investigative file under Exemption 7(A), or under two other exemptions: Exemption 5, concerning the deliberative process privilege, and Exemption 7(D), concerning implied assurances of confidentiality. She also contends that the FBI failed to conduct the record-level review required under Exemption 7(A) when it first received her request. Because the Court finds that the FBI has adequately justified its withholding of records under Exemption 7(A), it need not address Tipograph's other objections. The Court will, however, remind the FBI of its obligation to conduct record-level reviews at the administrative level before refusing to produce records contained in its investigative files.

**I.     Background**

Marie Mason, a member of the Earth Liberation Front ("ELF"), pled guilty to arson against a research facility at Michigan State University. First Decl. of David M. Hardy, July 22, 2014 ("Hardy Decl.") ¶¶ 7–9. An expert declaration submitted by the plaintiff describes members of the ELF and similar groups as loosely-affiliated activists who engage in civil disobedience and occasional acts of relatively harmless property destruction to raise awareness about environmental protection and animal rights. First Declaration of Ryan Noah Shapiro ("Shapiro Decl.") ¶¶ 11–14. The FBI begs to differ, calling them "extremists [who] present one of the most serious domestic terrorism threats in the United States today." Public Decl. of John Giacalone, July 14, 2014 ("Giacalone Decl.") ¶ 5. Mason is currently serving a twenty-year sentence. Hardy Decl. ¶ 9.

In December 2011 Mason's attorney, Susan Tipograph, submitted a FOIA request to the FBI for documents related to her client. Compl. ¶ 9. She requested copies of "any records that were prepared, received, transmitted, collected and/or maintained by the FBI relating to Marie Mason" for the period between January 26, 1962 and November 7, 2011. Id. After conducting a search of its database, the FBI informed Tipograph that information responsive to her request was located "in an investigative file" and was therefore exempt from disclosure pursuant to FOIA Exemption 7(A). Hardy Decl. ¶ 12 & Ex. C. Tipograph appealed this determination, which the FBI affirmed. Id. ¶¶ 13, 15 & Exs. D, F. The FBI later released 199 pages of public source information in whole or in part. Id. ¶¶ 17, 18, 21. After a hearing before Judge Wilkins, who previously presided over this matter, the FBI also released duplicate pages and pages that were no longer subject to a court sealing order. Second Decl. of David M. Hardy, July 22, 2014 ("Second Hardy Decl."), ¶¶ 5, 14.

As for the remaining responsive documents, the FBI argues that any further disclosure "would interfere with potential law enforcement proceedings." Hardy Decl. ¶ 39. The FBI also asserts the right to withhold those same records on the grounds that they are classified, statutorily exempt, privileged, confidential, and contain information on investigative technique and procedures. Id. ¶¶ 32, 35 & Ex. G. The government has not disclosed how many records it is withholding, arguing that that "information would reveal the scope and extent of the FBI's investigations, which would interfere with such ongoing proceedings." Id. ¶ 39.

## II.     Standard of Review

Congress passed FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Am. Civil Liberties Union v. Dep't of Justice, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). The act, however, contains a set of exemptions to the general obligation to provide government records to the public. 5 U.S.C. § 552(b). These exemptions are intended "to balance the public's interest in governmental transparency against the 'legitimate governmental and private interests [that] could be harmed by release of certain types of information.'" United Techs. Corp. v. Dep't of Defense, 601 F.3d 557, 559 (D.C. Cir. 2010) (quoting Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992) (*en banc*)). Because FOIA "mandates a strong presumption in favor of disclosure," its "statutory exemptions, which are exclusive, are to be narrowly construed." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quotations omitted).

Like most FOIA cases, this suit comes to the Court on cross motions for summary judgment.  Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In deciding a motion for summary judgment, the Court assumes the truth of the non-movant's evidence and draws all reasonable inferences in the non-movant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The government bears the burden to establish that its claimed exemptions apply to each document for which they are invoked.  Am. Civil Liberties Union, 628 F.3d at 619.  It may satisfy this burden through declarations that describe the justifications for its withholdings in "specific detail, demonstrate[ing] that the information withheld logically falls within the claimed exemption."  Id.  The government cannot satisfy its burden with affidavits that are vague or conclusory, or merely parrot the statutory standard. Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006).  The Court affords an agency affidavit substantial weight so long as it "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."  Judicial Watch, Inc. v. Dep't of Defense, 715 F.3d 937, 940–41 (D.C. Cir. 2013) (quotation omitted).

**III.    Analysis**

Tipograph does not dispute the adequacy of the FBI's search for responsive records.  Pl.'s Resp. Def.'s Statement of Material Facts ¶ 5.  She objects, rather, to three of the eight exemptions the government asserts.  Tipograph contends that the government's descriptions of the categories of records it withheld pursuant to Exemption 7(A) do not functionally link those categories to any rational investigative purpose.  She further alleges that the government has not provided enough detail to justify its withholding of the same records under Exemption 5, which protects the deliberative process privilege, or Exemption 7(D), which shields from disclosure information given under an implied grant of confidentiality.  Finally, Tipograph argues that the

FBI has a practice of not conducting a document-by-document review—as required to invoke Exemption 7(A)—until after a requester files a lawsuit, and thus seeks a declaratory judgment and injunction to ensure adherence to that requirement in the future. As noted previously, because the Court finds that the FBI properly invoked Exemption 7(A), it need not consider Tipograph's objections to the other two exemptions.

### A.     Exemption 7(A)

FOIA Exemption 7(A) protects from disclosure "records or information" compiled for law enforcement purposes, the production of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The exemption applies "whenever the government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information." Robbins Tire, 437 U.S. at 232. Courts allow withholding under Exemption 7(A), for example, when "[p]ublic disclosure of information could result in destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation." Solar Sources, Inc. v. United States, 142 F.3d 1033, 1039 (7th Cir. 1998); accord Kay v. FCC, 976 F. Supp. 23, 39 (D.D.C. 1997), aff'd, 172 F.3d 919 (D.C. Cir. 1998) (holding that withholding information is appropriate where release "could lead to possible witness intimidation"). In response to a series of D.C. Circuit opinions that interpreted Exemption 7(A) expansively, Congress amended the FOIA statute in 1974 to impose "a more exacting requirement"—an agency may only withhold a record that specifically meets the exemption; it may not shield a document from disclosure simply because it is kept in an investigative file. Crooker v. Bureau of Alcohol, Tobacco & Firearms, 789 F.2d 64, 66 (D.C. Cir. 1986) (citing Robbins Tire, 437 U.S. at 236, 229–30).

Even under the more exacting standard, the government does not have to make a page-by-page showing to justify a 7(A) Exemption.  Rather, it may argue that certain kinds of investigative records would interfere with a law enforcement proceeding.  Id. at 67.  In order to employ this categorical approach, however, the government must articulate a "rational link between the nature of the document and the alleged likely interference."  Id.  This requires three steps:  "First, [the government] must define its categories functionally.  Second, it must conduct a document-by-document review in order to assign documents to the proper category.  Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings."  Bevis v. Dep't of State, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986).

To establish that it has satisfied these requirements, the FBI offers two declarations from David M. Hardy, Section Chief of the FBI Record/Information Dissemination Section, and two declarations—one public, one *ex parte*, *in camera*—from John Giacalone, Assistant Director for Counterterrorism.  Hardy states in his first affidavit that the FBI searched its databases and located a responsive investigative file.  Hardy Decl. ¶¶ 11–12, 28.  He asserts that the FBI reviewed each document in the file and then assigned each record to one of two categories:  evidentiary/investigative materials or administrative materials.  Id. ¶¶ 40, 46.  The first category includes "[c]onfidential source and witness statements"; exchanges of information between local, state, or federal agencies; and "[i]nformation concerning physical and documentary evidence."  Id. ¶ 46.  The second category covers reports on the progress of investigations; miscellaneous administrative documents; and administrative instructions on investigative procedures and strategies.  Id.  Further disclosure of either category of documents, the government affiants assert, could interfere with "pending criminal law enforcement proceedings," id. ¶ 42, by prompting the harassment of potential witnesses, enabling investigative targets to destroy

6

evidence or create false evidence, or tipping off subjects to avoid detection or apprehension. Giacalone Decl. ¶ 14; Hardy Decl. ¶¶ 44–45.

Tipograph responds that the FBI's declarations do not meet the government's burden under <u>Bevis</u> to justify withholding records pursuant to Exemption 7(A), with the exception of confidential source statements.  The Court disagrees.  The declarations provides sufficient detail for the Court to trace a rational link between the information contained in the records and the potential interference with law enforcement proceedings.  For example, the Hardy declaration states that documents in the category of "exchange of information" between agencies would identify the FBI's investigative interest in particular individuals.  Hardy Decl. ¶ 46.  And the "administrative documents" category includes "reporting communications" which

> are replete with detailed information about the investigative activities as well as detailed information about potential witnesses and confidential sources to be interviewed. Additionally, they contain background information about third party individuals, the origin of pertinent information that ties them to the investigation, their connection with the subjects, and their relationship with the pending investigation.

<u>Id.</u>  That category also includes envelopes "used to store records obtained from a confidential source," including notations identifying the date, place and person who provided the record, and instructions requesting specific investigative inquiries.  <u>Id.</u>  Because this explanation describes the nature of the information contained in the records, rather than merely the nature of the records themselves, it permits the Court to infer a rational link between the records and an investigative purpose.  See <u>Bevis</u>, 801 F.2d at 1390.  And the Giacaolone declaration specifically attests to the likely harms to witnesses and evidence from further disclosure.  Giacalone Decl. ¶ 14.  Because Tipograph has not produced any evidence to demonstrate the FBI's bad faith or contradict the government's affidavits, see <u>Judicial Watch</u>, 715 F.3d at 940–41, the Court finds

that the government has met its burden to justify withholding the remainder of the investigative records under Exemption 7(A).

### B.     Declaratory and Injunctive Relief

In addition to disclosure of the withheld records, Tipograph seeks a declaration that the FBI's initial invocation of Exemption 7(A) at the investigative-file level violated FOIA and an injunction prohibiting that practice in the future.  It is within the Court's equitable power to issue a declaratory judgment or injunction in a FOIA matter.  In Payne Enterprises, Inc. v. United States, for example, the D.C. Circuit held that a declaratory judgment was warranted, and an injunction might well be required, where the Air Force "in every case" released information withheld at the administrative level after a suit was filed.  837 F.3d 498, 494 (D.C. Cir. 1988).  Tipograph argues that the circumstances here provide grounds for similar relief.  As she correctly points out, the FBI's initial written response to her FOIA request did not indicate that a record-by-record review had been conducted.  Hardy Decl. Ex. C (stating only that "the records responsive to your request are law enforcement records").  More to the point, Tipograph contends that, had a document-by-document review been conducted at the administrative stage, it is unlikely that the review would have failed to uncover the roughly 200 public-source documents that the FBI produced only after Tipograph filed suit.  The Hardy declaration is noticeably ambiguous on the scope of review at the administrative level, stating merely that the FBI "research[d] responsive files."  Second Hardy Decl. ¶ 9.

Because Tipograph has not established that forgoing the document-by-document review required by Exemption 7(A) is a widespread practice at the FBI, the Court declines to issue a declaratory judgment or injunction.  But because the Court has doubts about whether the FBI conducted the required review at the administrative stage in this case, it will remind the Bureau

of its obligation to perform such reviews in the future.  See Crooker, 789 F.2d at 66 (holding that Congress eliminated "blanket exemptions for Government records simply because they were found in investigatory files compiled for law enforcement purposes'" (quoting Robbins Tire, 437 U.S. at 236, 229–30)).

### C. Attorney's Fees

Finally, Tipograph requests attorney's fees.  A plaintiff may not recover attorney's fees in a FOIA action merely because the agency released additional documents after the plaintiff filed a complaint in federal court.  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1496 (D.C. Cir. 1984).  Moreover, Tipograph has not demonstrated that she has "substantially prevailed" in this litigation more generally—as is required to obtain attorney's fees under FOIA—because she has not obtained a "judicial order," "enforceable written agreement or consent decree," or a "voluntary or unilateral change in position by the agency."  5 U.S.C. §§ 552(a)(4)(E)(i)–(ii).  The Court therefore denies this request.

### IV. Conclusion

For the foregoing reasons, the Court will grant the government's Motion for Summary Judgment and deny Tipograph's Motion for Summary Judgment.  An Order will accompany this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:   March 18, 2015