**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SUSAN TIPOGRAPH,**

Plaintiff,

v.

Case No. 1:13-cv-00239 (CRC)

**DEPARTMENT OF JUSTICE,**

Defendant.

## MEMORANDUM OPINION

Veteran criminal-defense and civil-rights lawyer Susan Tipograph filed a Freedom of Information Act ("FOIA") request with the FBI, seeking records concerning her client Marie Mason, an environmental activist currently serving a lengthy federal prison sentence for arson and other acts of property destruction. After the FBI withheld all responsive materials from Mason's investigative file, Tipograph sued the Department of Justice ("DOJ"). She alleged that the FBI violated FOIA by improperly withholding Mason's investigative records under FOIA Exemption 7(A) (Count One) and by maintaining a policy of invoking that exemption at the file level, rather than at the record level as courts have required (Count Two). The Court previously granted summary judgment for DOJ on Count One of Tipograph's complaint. With the benefit of additional briefing, it now proceeds to consider DOJ's motion for summary judgment on Count Two. Finding that Tipograph has not shown that she faces an ongoing or imminent future injury from the challenged FBI policy, the Court concludes that she lacks standing to pursue the relief she seeks. The Court will therefore grant DOJ's motion.

### I.    Background

In December 2011, Susan Tipograph submitted a FOIA request to the FBI for documents related to her client Marie Mason. Compl. ¶ 9. Mason, a member of the environmental activist

group Earth Liberation Front, was sentenced to a lengthy prison term after pleading guilty in September 2008 to arson against a research facility at Michigan State University and other acts of property destruction.  Def.'s Mot. Summ. J. Ex. 1, ECF No. 22, Decl. David M. Hardy ("First Hardy Decl.") ¶¶ 7–9.  Seeking explanations for Mason's assignment to an enhanced-security prison unit, Tipograph requested copies of "any records that were prepared, received, transmitted, collected and/or maintained by the FBI relating to Marie Mason" for the period between January 26, 1962 and November 7, 2011.  Compl. ¶ 9; Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Attach. 6, ECF No. 48, Decl. Susan Tipograph ("Tipograph Decl.") ¶ 7.  After conducting a search of its database, the FBI informed Tipograph that information responsive to her request was located "in an investigative file" and was therefore exempt from disclosure under FOIA Exemption 7(A).  First Hardy Decl. ¶ 12 & Ex. C.  Tipograph appealed this determination, which the FBI affirmed.  Id. ¶¶ 13, 15 & Exs. D, F.  The FBI later released 199 pages of public-source information in whole or in part.  Id. ¶¶ 17–18, 21.  After a hearing before Judge Wilkins, who previously presided over this matter, the FBI also released duplicate pages and pages that were no longer subject to a court sealing order.  Def.'s Reply, ECF No. 34, Decl. David M. Hardy ("Second Hardy Decl.") ¶¶ 5, 14.

As for the remaining responsive documents, this Court held on March 18, 2015 "that the FBI properly invoked Exemption 7(A)," Tipograph v. U.S. Dep't of Justice, 83 F. Supp. 3d 234, 239 (D.D.C. 2015), and granted summary judgment for the government as to Tipograph's entire complaint, id. at 241.  Tipograph then moved for reconsideration of the Court's grant of summary judgment on Count Two, arguing that the Court's ruling was precipitous because the government had not presented argument on that count in the memorandum supporting its motion. Although the government had addressed Count Two in its opposition to Tipograph's cross-

motion for summary judgment, the Court accepted Tipograph's argument and, upon reconsideration, vacated its grant of summary judgment for DOJ on Count Two of the complaint. Order Pl.'s Mot. Reconsideration, June 11, 2015, ECF No. 40.  The parties have now fully briefed the issue of whether summary judgment should be granted as to Count Two.

## II.    Standard of Review

Congress passed FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Am. Civil Liberties Union v. U.S. Dep't of Justice, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting U.S. Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).  The act, however, contains a set of exemptions to the general obligation to provide government records to the public.  5 U.S.C. § 552(b).  These exemptions are intended "to balance the public's interest in governmental transparency against the 'legitimate governmental and private interests [that] could be harmed by release of certain types of information.'"  United Techs. Corp. v. U.S. Dep't of Defense, 601 F.3d 557, 559 (D.C. Cir. 2010) (quoting Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)).  Because FOIA "mandates a strong presumption in favor of disclosure," its "statutory exemptions, which are exclusive, are to be narrowly construed."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quotations omitted).

In addition to challenging an agency's decision to withhold certain information under these exemptions, a plaintiff may challenge an agency policy or practice as a violation of FOIA. See Payne Enterprises, Inc. v. United States, 837 F.2d 486, 490–92 (D.C. Cir. 1988).  "The fact

that the practice at issue is informal, rather than articulated in regulations or an official statement of policy, is irrelevant . . . ." Id. at 491.  Thus, "[s]o long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice"—seeking prospective equitable relief—may proceed even if that party has obtained "release of the specific documents that prompted the suit." Id.

Like most FOIA cases, this suit comes to the Court on cross-motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In deciding a motion for summary judgment, the Court assumes the truth of the non-movant's evidence and draws all reasonable inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The government bears the burden to establish that its claimed exemptions apply to each document for which they are invoked. Am. Civil Liberties Union, 628 F.3d at 619.  It may satisfy this burden through declarations that describe the justifications for its withholdings in "specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption." Id.  The government cannot satisfy its burden with affidavits that are vague or conclusory, or that merely parrot the statutory standard. Consumer Fed'n of Am. v. U.S. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006).  The Court accords an agency affidavit substantial weight so long as it "is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." Judicial Watch, Inc. v. U.S. Dep't of Defense, 715 F.3d 937, 940–41 (D.C. Cir. 2013) (quotation omitted).

## III.    Analysis

Tipograph alleges that the FBI maintains a policy of improperly invoking FOIA Exemption 7(A) at the investigative-file level rather than at the record level.  Compl. ¶¶ 16, 18.

4

The FBI denies this allegation.  Before the Court can proceed to the merits of Tipograph's claim, it must first assure itself that it has jurisdiction to hear the claim at all.  To this end, the Court must assess whether it is presented with an actual case or controversy.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.").  The government contends that (1) Tipograph's claim is moot because it has turned over all records to which she is entitled, and (2) Tipograph is without standing to bring her claim because she has not shown that she is likely to be injured in the future by any such policy.  The Court concludes that while Tipograph's claim has not been mooted by the release of records in this case, she has nonetheless failed to establish that her alleged future injury is sufficiently concrete or imminent to confer standing.

A.  Mootness

The government contends that Tipograph's "claims . . . under Count II are moot because the FBI has released all records to which [she] is entitled under her FOIA request."  Mem. Supp. Defs.' Mot. Summ. J. 3.  Mootness refers to "the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'"  DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).  If Tipograph had based her claim in Count Two on the FBI's initial failure to release records that she was subsequently provided, the government surely would be correct that her claim is moot.  After all, "[a] declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution" because a case or controversy would no longer exist.  Payne Enterprises, Inc. v. United States, 837 F.2d

5

486, 491 (D.C. Cir. 1988) (citing Better Gov't Ass'n v. U.S. Dep't of State, 780 F.2d 86, 91

(D.C. Cir. 1986)).  But the government has misread Count Two.  Tipograph seeks *prospective*

declaratory and injunctive relief on the ground that she is likely to be harmed by the FBI's

"ongoing practices *in the future*," not that the FBI improperly withheld certain requested

documents in the past.  Compl. ¶ 26 (emphasis added).  "[E]ven though a party may have

obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency

policy or practice will impair the party's lawful access to information in the future."  Payne

Enterprises, Inc., 837 F.2d at 491.  Because Tipograph alleges that a policy or practice of the FBI

will impact her lawful access to information in the future, her claim for prospective declaratory

and injunctive relief is not moot simply because the FBI has now provided her with the records

to which she is entitled.

       B.  Standing

In a related argument, the government contends that Tipograph lacks standing because

she has not shown that she faces an ongoing injury or an imminent future injury.  This argument

fares better.  To have standing, a plaintiff must suffer "an 'injury in fact'—an invasion of a

legally protected interest"—which is concrete and particularized and is actual or imminent.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In addition, "there must be a causal

connection between the injury and the conduct complained of."  Id. (quoting Simon v. Eastern

Ky. Rights Org., 426 U.S. 26, 41–42 (1976)).  Finally, "it must be 'likely,' as opposed to merely

'speculative,' that the injury will be 'redressed by a favorable decision.'"  Id. (quoting Simon,

426 U.S. at 38, 43, 96).  A plaintiff in Tipograph's position, who claims to have been harmed in

the past by an agency policy, must make a "showing of [a] real or immediate threat that [she]

will be wronged again" by that policy in order "to make out a case or controversy" under Article

III. <u>Lyons</u>, 461 U.S. at 103, 111.  A court may not hear a claim for equitable relief that rests solely on a "speculative . . . claim of future injury."  <u>Id.</u> at 111.

At present, Tipograph's claim of future injury remains just that—speculative.  Her complaint alleges in general terms that she "intends to file additional FOIA requests in the future relating to records that are likely to be contained in investigative files, and as such is likely to be improperly denied records" based on the FBI's purported policy or practice "in future requests." Compl. ¶ 26.  Tipograph supports this allegation with a declaration, in which she avers that, as a criminal-defense and civil-rights lawyer, "part of [her] legal strategy has been and continues to be submission of FOIA requests to the FBI for records relating to [her] clients."  Tipograph Decl. ¶¶ 3–4.  She asserts that she has filed "dozens" of FOIA requests over the past four decades, <u>id.</u> ¶ 8, and claims that she "will continue submitting FOIA requests to the FBI for records relating to [her] current and future clients," explaining that "[b]ecause of the nature of [her] work – representing criminal defendants and activists being surveilled by the FBI – there are typically pending or prospective law enforcement proceedings relating to [her] clients," <u>id.</u> ¶ 9.  Thus, Tipograph reasons, she will "suffer a continuing injury" from the FBI's policies in asserting FOIA Exemption 7(A).  <u>Id.</u> ¶ 11.

Article III, however, requires Tipograph to provide more than generalized plans to file unspecified requests for information at some uncertain point in the future.  "[T]o challenge an agency police or practice" as a violation of FOIA, a plaintiff must "establish *likely* future injury that is both concrete and *imminent*."  <u>Coleman v. DEA</u>, No. 1:14–cv–00315 (APM), 2015 WL 5730707, at *9 (D.D.C. Sept. 29, 2015) (emphases added).  While "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, . . . [i]n response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere

allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" Lujan, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

If a plaintiff demonstrates that it will be subjected in the near future to the particular agency policy or practice that it challenges under FOIA, then the injury requirement of Article III standing is satisfied.  The D.C. Circuit, for example, has held that in determining whether a plaintiff has "shown that it will suffer continuing injury from [an] allegedly unlawful policy" in the FOIA context, a plaintiff may "avoid mootness under Payne" and proceed to challenge an agency policy when "its business depends on continually requesting and receiving documents that the policy permits the [agency] to withhold."  Newport Aeronautical Sales v. U.S. Dep't of Air Force, 684 F.3d 160, 164 (D.C. Cir. 2012).  The plaintiff in Newport Aeronautical Sales was "a commercial data library that collect[ed] technical information, including documents, from the Air Force" in order to sell that information to contractors interested in various bids or government contracts.  Id. 366–67.  The Court reasoned that the company's consistent track record of requesting similar information from the Air Force—a practice fundamental to its business—implied that it would continually file FOIA requests in the future and have those requests denied under the challenged policy, thereby demonstrating that it would suffer ongoing injury.  Id. at 368.

When it is similarly clear that a plaintiff will continue filing FOIA requests that are likely to be subjected to the agency's policy or practice, a court should find that the plaintiff has satisfied the injury requirement.  But when a plaintiff's very business does not depend on filing FOIA requests, the inquiry can be more difficult.  In these situations, it is incumbent upon plaintiffs to present concrete plans showing their intent to file those requests.  One way for a plaintiff to make this showing is to "demonstrate that [it has] *pending* FOIA requests that are

likely to implicate the policy or practice." Nat'l Sec. Counselors v. CIA ("NSC II"), 931 F. Supp. 2d 77, 93 (D.D.C. 2013) (emphasis added). In NSC II, for instance, Judge Howell reasoned that an organization "had standing to pursue its policy-or-practice claims" because of its "clear intent" to file further FOIA requests—an intent that "was *only concretely apparent* because of the outstanding FOIA requests that [the organization] was still pursuing with the [agency], which were themselves likely to implicate the challenged policies in the future." Id. at 93 (emphasis added); see also Ctr. for Study of Servs. v. U.S. Dep't of Health & Human Servs., Civ. No. 14–498 (GK), 2015 WL 5110939, at *5 (D.D.C. July 1, 2015) (holding that a plaintiff adequately described an ongoing injury where he had "already requested . . . data" that an agency's policy or practice would lead it to withhold under a FOIA exemption); Nat'l Sec. Counselors v. CIA ("NSC I"), 898 F. Supp. 2d 233, 262 (D.D.C. 2012) ("Recent cases have clarified that, where a FOIA requester challenges an alleged ongoing policy or practice and can demonstrate that it has pending claims that are likely to implicate that policy or practice, future injury is satisfied."). By the same token, in Citizens for Responsibility and Ethics in Washington ("CREW") v. U.S. Department of Homeland Security, Judge Lamberth held that no case or controversy existed in part because "CREW [did] not allege anywhere . . . that it has a FOIA request pending with the [agency]." 527 F. Supp. 2d 101, 106 (D.D.C. 2007); see also Coleman, 2015 WL 5730707, at *8–9 (holding that when a plaintiff has no pending FOIA request with an agency and has not averred that he intends "to make FOIA requests to the [agency] in the future," any "claim of future injury is simply too speculative and remote to give him standing").

      If a plaintiff does not have a separate FOIA request pending before the agency that would be subjected to the challenged policy or practice, then the specificity with which the plaintiff indicates its intent to file future FOIA requests is crucial. A "passing allegation that" a plaintiff

plans to file additional FOIA requests to the agency in the future will not suffice to "establish . . . standing to pursue [a] 'pattern or practice' claim." Quick v. U.S. Dep't of Comm., 775 F. Supp. 2d 174, 187 (D.D.C. 2011); see also NSC II, 931 F. Supp. 2d at 94 ("[G]eneral statements about a 'regular' course of conduct and an expressed intention to 'continue to do so in the future' do not establish the same concrete likelihood of injury that emanates from allegations of specific, pending FOIA requests that are likely to be subject to an agency's challenged policies."). Although it may be "plausible" that a plaintiff will be harmed in the future by the policy or practice she challenges, a "[c]ourt cannot say that the alleged future injury is either real or imminent" without information "in the record . . . suggest[ing] how frequent[ly] these requests are made . . . and whether (or when) [the plaintiff] expects to file future FOIA requests." CREW, 527 F. Supp. 2d at 106 (noting that plaintiff did not allege "that it intend[ed] to file a *specific* FOIA request with the [agency] . . . in the *near* future" (emphases added)). Even when a plaintiff claims that receiving information under FOIA plays a role in its professional work, the fact "[t]hat [a plaintiff] may one day file another FOIA request with the [agency] does not represent a cognizable, palpable injury which presents a case or controversy for the Court to consider." Id. Rather, for a plaintiff to "have Article III standing to bring [her] policy-or-practice claim[]," her statements must be "sufficiently concrete for the Court to conclude that [she is] likely to be subjected to the[] alleged policies or practices in the future." NSC II, 931 F. Supp. 2d at 94.

Due to "the nature of [her] work – representing criminal defendants and activists being surveilled by the FBI," Tipograph Decl. ¶ 9, it is certainly plausible that Tipograph will file FOIA requests in the future that could implicate the alleged policy or practice that she challenges here. The general statements in her declaration, however, do not "establish likely future injury

that is both concrete and imminent." <u>Coleman</u>, 2015 WL 5730707, at *9.  She neither asserts

that she has any FOIA requests pending that could implicate the alleged FBI policy or practice

nor identifies a "specific FOIA request" that she intends to file "in the near future." <u>CREW</u>, 527

F. Supp. 2d at 106.  She claims only that she "will continue submitting FOIA requests to the FBI

for records relating to [her] current and future clients" at some point.  Tipograph Decl. ¶ 9.  And

while a "consistent habit of filing such requests both before *and after* the commencement of this

litigation" could help to "display a clear intent to continue filing FOIA requests with the

[agency]," <u>NSC II</u>, 931 F. Supp. 2d at 93 (quoting <u>NSC I</u>, 898 F. Supp. 2d at 262), Tipograph has

filed no FOIA requests with the FBI since 2012 (the request at issue in this case) and submitted

her other two most recent requests in 1999 and 1988, <u>see</u> Def.'s Mot. Summ. J. Attach 1, Decl.

David M. Hardy ("Third Hardy Decl.") ¶ 11.  Tipograph thus has no consistent history of filing

these types of requests, and the Court has before it no indication of when she might file her next

one.  On this record, "the Court cannot say that [her] alleged future injury is either real or

imminent." <u>Id.</u>  Therefore, Tipograph has "failed to establish that [she has] Article III standing

to bring [her] policy-or-practice claim[]." <u>NSC II</u>, 931 F. Supp. 2d at 94.

###    IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary

Judgment.  An Order accompanies this Memorandum Opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:    November 24, 2015

11